IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STESHAWN BRISCO, #M34290, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 3:20-cv-00366-GCS |
| | ) | |
| JACQUELINE LASHBROOK, | ) | |
| ANGELA CRAIN, | ) | |
| DR. GOLDMAN, | ) | |
| J. WEATHERFORD, | ) | |
| IDOC HEALTHCARE PROVIDER | ) | |
| WEXFORD (or Other John Doe/Jane | ) | |
| Doe Health Care Provider), | ) | |
| C/O CHITTY, | ) | |
| C/O TOWLE, | ) | |
| DR. SIDDIQUI, | ) | |
| JOHN R. BALDWIN, | ) | |
| JOHN DOE C/O #1, | ) | |
| and JOHN DOE C/O #2, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Steshawn Brisco, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He asserts violations of the Eighth Amendment related to his attempted suicide in May 2018.[1] (Doc. 1). He seeks monetary damages and injunctive relief. (Doc. 1, p. 22).

This case is now before the Court for preliminary review of the Complaint under

---

[1] Brisco previously brought a deliberate indifference claim against Defendant Chitty based on the same incident, designated as Count 4 in *Brisco v. Spiller, et al.*, Case No. 18-cv-2033-NJR. (S.D. Ill. Jan 15, 2019). The claim was severed into a separate action, *Brisco v. Chitty*, Case No. 19-cv-45-NJR. That severed case was dismissed without prejudice on February 7, 2019, at Brisco's request. (Doc. 6 in No. 19-45-NJR).

28 U.S.C. § 1915A,[2] which requires the Court to screen prisoner Complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a).  Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed.  *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Plaintiff makes the following allegations in his Complaint:  On May 3, 2018, a prison mental health provider[3] directed security staff to place Plaintiff on crisis watch and monitor him closely because he was suicidal.  (Doc. 1, p. 2).  While escorting Plaintiff to the crisis cell, C/O Chitty told Plaintiff he did not believe the seriously mentally ill ("SMI")[4] prisoners and thought Plaintiff was faking.  Chitty told Plaintiff he had placed a piece of staple into the cell so that if Plaintiff was serious, he could kill himself and "do them all a favor."  (Doc. 1, p. 3).  Plaintiff found the piece of staple and used it to cut up his right forearm in a suicide attempt.  Additionally, Chitty knew that the crisis watch cell was contaminated with feces, blood, and urine on the floor and walls, yet he deliberately placed Plaintiff in those unsanitary conditions.  (Doc. 1, p. 19).

C/O Towle discovered Plaintiff in the act of cutting himself and told Plaintiff that if he did not give him the staple officers would have to restrain and beat him.  (Doc. 1, p.

---

[2]    The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memoranda of Understanding between the Illinois Department of Corrections, Wexford, and this Court.

[3]    Malissa Pappas, who is not a Defendant in this action.

[4]    Plaintiff's Complaint indicates that he counts himself among the inmates who have serious mental illness, but he does not elaborate on what condition(s) place him in the SMI category, other than being suicidal.

3).  In fear of this threat, Plaintiff gave Towle the staple and asked him to call a med tech to stop the bleeding from his wound.  Towle refused, telling Plaintiff he had to deal with it himself because he took so long to give up the staple. (Doc. 1, p. 3-4).

The following day, Plaintiff told J. Weatherford (a prison mental health professional) about the suicide attempt and showed him the wound.  Weatherford told Plaintiff he would make sure Plaintiff was seen by a health care provider because the cut looked bad and could get infected.  (Doc. 1, p. 4).  Weatherford told John Doe C/O #1 (possible surname Schomenti) and John Doe C/O #2 (possible surname Griffin or Griffith) of N2 cellblock to take Plaintiff for medical care.  *Id.*  They took Plaintiff to the N2 segregation infirmary bullpen to wait for a nurse or med tech; Plaintiff, however, waited there two hours without being seen.  (Doc. 1, p. 4-5).  The John Doe C/O's #1 and #2 told Plaintiff the medical staff did not want to see him and took him back to his cell, but Plaintiff claims the C/Os never told the nurse about his condition.  (Doc. 1, p. 5).  Plaintiff faults Weatherford for not making sure he received medical attention for his arm. (Doc. 1, p. 6-7, 10).

Thereafter, Plaintiff submitted several sick call requests as well as multiple letters to the Menard Medical Director,[5] but received no response and was never called to see any medical provider about his arm wound.  (Doc. 1, p. 5).  Plaintiff further wrote to Warden Lashbrook, Mental Health Director Goldman, and IDOC Health Source

---

[5]      Plaintiff does not refer to the "Medical Director" by name in this section of the Complaint, but identifies Angela Crain as the Menard Medical Director in the caption.  (Doc. 1, p. 1-2, 5).

Department Wexford/Wexford Health Sources, Inc. ("Wexford")[6] seeking treatment for his arm wound.  (Doc. 1, p. 6, 10).  Plaintiff, however, received no response from these officials, and his arm was never examined or treated by a health care provider.  *Id.*

Later in May 2018, Plaintiff saw Dr. Siddiqui for unrelated medical issues.  (Doc. 1, p. 9).  He asked Dr. Siddiqui to also look at the self-inflicted laceration on his arm, which had "turned green" causing him to fear it was infected.  (Doc. 1, p. 9, 15).  Dr. Siddiqui refused treatment for the cut, telling Plaintiff he would have to submit a separate sick call request for that issue as that was not the purpose of his visit that day.  (Doc. 1, p. 9, 15).  Plaintiff maintains he had submitted a sick call request that was ignored.  (Doc. 1, p. 11, 34).

Plaintiff asserts that none of the mental health staff or correctional officers at Menard are properly trained to deal with SMI inmates, and they are not following the rules set forth in the settlement agreement in *Rasho, et al., v. Baldwin, et al.*, Case No. 07-cv-1298-MMM (C.D. Ill.), even though they are aware of the court order.  (Doc. 1, p. 7-8, 11).  Goldman, Lashbrook, Baldwin, and Wexford are responsible for adequately training staff to deal with SMI inmates and for following the *Rasho* agreement, but have failed to do so and turned a blind eye to conditions at Menard that violate the settlement and caused Plaintiff harm.  (Doc. 1, p. 11, 14, 20).  Plaintiff claims Lashbrook is responsible for the misconduct of Chitty, Towle, and the John Doe Security C/O staff[7] because she failed

---

[6]      Plaintiff refers to Wexford Health Sources, Inc. by various names in the Complaint, including "Health Source Wexford or other John Doe C.E.O."   (Doc. 1, p. 1-2, 10).  The Court will refer to this party/parties collectively as "Wexford."

[7]      The Court assumes Plaintiff is referring here to the John Doe C/O's #1 and #2.

to train them properly.  (Doc. 1, p. 14).  Plaintiff also alleges that Lashbrook and Wexford train their medical staff to ignore inmates' medical needs.  (Doc. 1, p. 18).

Further, Wexford as well as Medical Director Crain, Lashbrook, Goldman, and IDOC Director Baldwin deliberately understaff the prison medical unit as a cost-saving measure, thus Plaintiff was unable to obtain care for his arm wound.  (Doc. 1, p. 5, 9-10, 16, 21).  "Countless lawsuits" have informed Wexford, Baldwin, Lashbrook, Crain, and Siddiqui that Menard is overcrowded and understaffed, but they have not remedied the problem.  (Doc. 1, p. 17).

Plaintiff informed IDOC Director Baldwin about the denial of medical care via his grievances and a letter, but Baldwin did not respond or take any action to remedy the problem.  (Doc. 1, p. 12, 30).  Warden Lashbrook deemed Plaintiff's emergency grievance to be a non-emergency, and Plaintiff's letters to Lashbrook and Goldman were ignored. (Doc. 1, p. 12-14, 24-28).

For these alleged constitutional violations, Plaintiff seeks money damages and injunctive relief ordering Defendants to provide him with adequate mental health care and treatment during his incarceration, and to comply with the injunctive relief ordered by the Central District of Illinois in *Rasho*.  (Doc. 1, p. 22).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1:     Eighth Amendment deliberate indifference to serious medical/mental health needs claim against Chitty, for leaving a staple in Plaintiff's crisis/suicide watch cell purposefully and encouraging Plaintiff to use it to kill himself.

Count 2:        Eighth Amendment deliberate indifference claim against Chitty for housing Plaintiff knowingly in an unsanitary cell contaminated with human waste and blood.

Count 3:        Eighth Amendment deliberate indifference to serious medical needs claim against Towle, Weatherford, John Doe C/O #1, John Doe C/O #2, Siddiqui, and Crain for denying Plaintiff medical care for his self-inflicted arm injury.

Count 4:        Eighth Amendment deliberate indifference to serious medical/mental health needs claim against Lashbrook, Crain, Goldman, Baldwin, and Wexford for their practice and policy of understaffing medical and mental health providers that led to inadequate care while Plaintiff was on suicide watch and denial of medical care for his injury.

Count 5:        Eighth Amendment deliberate indifference to serious medical/mental health needs claim against Lashbrook, Crain, Goldman, Baldwin, and Wexford for their practice and policy of failing to train adequately correctional officers and medical and mental health providers on addressing the needs of SMI inmates, which resulted in Plaintiff having access to the staple, and the subsequent denial of medical care for Plaintiff's injury.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.   *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)(noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## DISCUSSION

### Counts 1 and 2

Prison officials violate the Eight Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious

medical and/or mental health needs. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that: (1) he suffered from an objectively serious medical or mental health condition; and (2) the defendant acted with deliberate indifference to his medical or mental health needs. *Id.* *See also Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001)(stating that "the need for a mental illness to be treated could certainly be considered a serious medical need").

Further, knowingly housing a prisoner in a cell contaminated with feces, urine, and blood may amount to an Eighth Amendment violation if it amounts to an excessive risk to the inmate's health and deprives him of basic human needs such as sanitation. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013).

Plaintiff alleges that he was suicidal, and Chitty knew this was the reason for Plaintiff's placement in the crisis watch cell. The assertions that Chitty knowingly put a staple in the cell, told Plaintiff to use it, and was aware of the unsanitary conditions of the cell when he placed Plaintiff in it are sufficient for Plaintiff to proceed on the deliberate indifference claims in Count 1 and 2 against Chitty.

### Count 3

Plaintiff states an Eighth Amendment claim against Towle, Weatherford, John Doe C/O #1, John Doe C/O #2, Siddiqui, and Crain. He alleges that each of these individuals was aware of his need for medical treatment for the cut on his arm, yet each failed to obtain or provide care for his self-inflicted wound. Count 3 may proceed against these six Defendants, however, Plaintiff must identify the John Doe Defendants by name before

they may be ordered to respond.

## Counts 4 and 5

The allegations in the Complaint are sufficient for Plaintiff to proceed on the deliberate indifference claim in Count 4 against Lashbrook, Crain, Goldman, and Baldwin for understaffing the medical and mental health providers at Menard purposefully, and the claim in Count 5 against these Defendants for failure to train staff on properly addressing the needs of SMI inmates. "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Plaintiff also states a viable claim in Counts 4 and 5 against Wexford. *See, e.g., Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)(noting that corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

Relevant to Counts 4 and 5, Plaintiff bases his claims in part on the Defendants' alleged failure to comply with orders entered by the Central District of Illinois in *Rasho*, Case No. 07-cv-1298-MMM. In that class action, the plaintiffs sought injunctive relief only and the court approved an Amended Settlement Agreement, as well as a Permanent Injunction, to remedy deficiencies in mental health treatment of prisoners in IDOC facilities. (*See* Doc. 711-1, 2633, 3051 in No. 07-1298, C.D. Ill.). An appeal of the court's orders is pending before the Seventh Circuit. The court in *Rasho* noted that an inmate who wishes to seek damages arising from deliberate indifference to a mental health condition must do so in an individual action, as Plaintiff has brought here. Plaintiff's

claims of Eighth Amendment violations shall be considered herein as the case proceeds. Whether or not Defendants have complied with court orders in *Rasho* may be relevant to Plaintiff's claims, but the alleged violation of the *Rasho* settlement agreement or orders does not state a distinct constitutional claim upon which relief may be granted.

### JOHN DOE DEFENDANTS

Plaintiff is responsible for conducting discovery (informal or formal) aimed at identifying the unknown "John Doe" Defendants, in accordance with the discovery order that will be entered by the Court. Once the names of the unknown Defendants are discovered, Plaintiff must file a motion to substitute the newly identified Defendants in place of the generic designations in the case caption and throughout the Complaint.

### DISPOSITION

The Complaint states colorable claims in Counts 1 and 2 against Chitty, in Count 3 against Towle, Weatherford, John Doe C/O #1, John Doe C/O #2, Siddiqui, and Crain, and in Counts 4 and 5 against Lashbrook, Crain, Goldman, Baldwin, and Wexford Health Sources, Inc.

The Clerk shall prepare for **JACQUELINE LASHBROOK, ANGELA CRAIN, DR. GOLDMAN, J. WEATHERFORD, WEXFORD HEALTH SOURCES, INC., C/O CHITTY, C/O TOWLE, DR. SIDDIQUI,** and **JOHN R. BALDWIN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of

Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with

this order will cause a delay in the transmission of court documents and may result in

dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is

**DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health

Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  November 30, 2020.**

Digitally signed
by Judge Sison 2
Date: 2020.11.30
12:21:32 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint.  After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint.  It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more.  When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures.  Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions.  Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature.  Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.