UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STESHAWN BRISCO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   Case No. 3:20-cv-00366-GCS |
| JACQUELINE LASHBROOK, | ) |
| ANGELA CRAIN, LISA GOLDMAN, | ) |
| JACOB WEATHERFORD, WEXFORD | ) |
| HEALTH SOURCES, INC., DUSTIN | ) |
| CHITTY, BRETT TOWLE, | ) |
| MOHAMMED SIDDIQUI, and JOHN | ) |
| BALDWIN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Steshawn Brisco, an inmate in the custody of the Illinois Department of Corrections ("IDOC") and currently incarcerated at Cook County Department of Corrections, brought suit against Defendants for allegations stemming from actions against Plaintiff while he was incarcerated at Menard Correctional Center ("Menard"). (Doc. 1). Plaintiff brings five counts against defendants for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Doc. 17, p. 5). In the first count, Plaintiff alleges that Defendant Chitty left a staple in Plaintiff's cell, encouraging Plaintiff to kill himself. *Id.* In the second count, Plaintiff states that Defendant Chitty knowingly left Plaintiff in an unsanitary cell contaminated with human waste and blood. *Id.* at p. 6. In the third count, Plaintiff claims that Defendants Towle, Crain, Weatherford

and Siddiqui were deliberately indifferent to his need for medical care after a self-inflicted arm injury. *Id*. In the fourth count, Plaintiff asserts that Defendant Wexford Health Sources, Inc. ("Wexford") and Defendants Lashbrook, Crain, Goldman, and Baldwin maintained a practice and policy of understaffing medical and mental health providers. *Id*. Finally, in the fifth count, Plaintiff states that Defendants Lashbrook, Crain, Goldman, Baldwin, and Wexford maintained a policy and practice of failing to adequately train correctional officers and medical and mental health providers on addressing the needs of inmates who are seriously mentally ill ("SMI"). *Id*.

Now before the Court are the motions for summary judgment on the issue of exhaustion of remedy of both Defendants Siddiqui, Weatherford, and Wexford (the "Wexford Defendants") and Defendants Baldwin, Chitty, Crain, Goldman, Lashbrook, and Towle (the "IDOC Defendants"). (Doc. 41, 45). For the reasons delineated below, the motions for summary judgment are **GRANTED.**

## FACTUAL BACKGROUND

Plaintiff alleges that while he was on suicide watch at Menard on May 3, 2018, Defendant Chitty observed Plaintiff was locked in a cell contaminated with human feces and blood. (Doc. 42, p. 1). Instead of assisting Plaintiff, Defendant Chitty placed a part of a staple in his cell and told Plaintiff that he could use it to kill himself. *Id*. Plaintiff further claims that when Defendant Towle saw Plaintiff cutting himself, he refused to get Plaintiff medical treatment. *Id*. at p. 2. Plaintiff then submitted sick call requests to Defendants Lashbrook, Goldman, and Crain for treatment of his staple wound; however,

the defendants did not provide medical care because they are not properly trained to care for SMI inmates. *Id*.

On May 9, 2018, Plaintiff filed a grievance claiming that prison officers left a small staple for him to cut himself with after he informed a mental health medical provider that he was suicidal (the "May 9th grievance"). (Doc. 42, Exh. A, p. 29). Plaintiff also explained that he attempted to see nurses after he cut his arm, but the nurses told him that he could go back to his cell without being seen. *Id*. The Administrative Review Board ("ARB") received a copy of Plaintiff's initial grievance on May 30, 2019. *Id*. at p. 28. This copy indicated that the grievance was deemed non-emergent; however, it did not include a counselor's response. *Id*. The ARB denied the May 9th grievance as misdirected because Plaintiff was required to first have his current facility review the grievance. *Id*. at p. 27.

Plaintiff also mailed the ARB a letter, dated May 27, 2019 (the "May 29th letter"), in which he claims that he sent the May 9th grievance to his grievance officer, but never received a response. (Doc. 42, Exh. A, p. 30-31). Plaintiff further alleges that he filed grievances on June 1, 2018 (the "June 1st grievance") and July 2, 2018 (the "July 2nd grievance"), and that his grievance officer failed to respond to these grievances. *Id*. The ARB requested that Plaintiff submit a copy of the original grievances, but there is no evidence that Plaintiff did so. *Id*. at p. 27.

On June 11, 2019, Plaintiff submitted a grievance stating that he filed his May 9th, June 1st, and July 2nd grievances, but never received responses from his counselor (the "June 11th grievance"). (Doc. 42, Exh. A, p. 23-26). On August 16, 2019, Plaintiff's counselor responded that there was no record of grievances being received in May or

June. *Id.* at p. 23. The Grievance Officer noted that Plaintiff's May 9th grievance was received, but it was denied as non-emergent. *Id*. The Grievance Officer further found that Plaintiff's records indicated he received a copy of this decision on May 21, 2018. *Id*. Plaintiff's grievance logs do not contain evidence of an appealed or re-filed May 9th grievance, or of the June 1st and July 2nd grievances. *Id*. at p. 1.

Plaintiff also filed a grievance stating that he did not receive medical care after his suicide attempt on September 29, 2019 (the "September 29th grievance"). (Doc. 42, Exh. A, p. 24-25). In this grievance, Plaintiff not only describes his inadequate care, but also references his May 9th emergency grievance. *Id*. However, Plaintiff's counselor denied this grievance as out-of-time on October 3, 2019. *Id*. at p. 24. Plaintiff appealed this decision to the ARB, but the ARB denied the grievance as untimely.

In response to Defendants' motions for summary judgment, Plaintiff included two affidavits from alleged witnesses, Mr. Kevin Watson and Mr. Derrick Thompson. (Doc. 52, p. 30-32, 44-46). The documents contain handwriting similar to both that of each other, and that of Plaintiff. *Id*. Neither document is notarized. *Id*. Defendants point out that Plaintiff has previously attempted to avoid liability by denying authorship of handwritten documents. In the exhibits to their motion for summary judgment, the IDOC Defendants include a note from an investigation by Menard incident officers into suspected gang activity at the prison. (Doc. 45, Exh. A, p. 19). In the note, the incident officer states that he discovered two letters, one of which was found to be a regular communication between inmates, while the other was found to be a security threat, as it detailed directions from a potential gang leader with directions to other inmates. *Id*. at p.

20. Though Plaintiff had admitted to writing the former, but denied writing the latter, a handwriting analysis revealed that the same person authored both letters. *Id*.

During the March 25, 2022 continuation of the hearing on Defendants' motions, Mr. Thompson testified on Plaintiff's behalf. According to Mr. Thompson, Plaintiff filed grievances in June, but did not receive a response. However, under questioning, Mr. Thompson admitted that he did not know the content of these grievances, or whether Plaintiff received a response. Furthermore, Mr. Thompson testified that sometimes Plaintiff helped him write grievances, and he both testified that Plaintiff did and did not help him write his affidavit. He also stated that he got an affidavit notarized for Plaintiff when the law library visited them in their cell during lockdown, but that he could not get a second affidavit notarized because the prisoners could not go to the law library during lockdown.

During the initial hearing on Defendants' motions, the IDOC Defendants called Plaintiff's counselor, Jennifer Cowan, Grievance Officer Kelly Pierce, and ARB member Lisa Weitekamp to testify as to the grievance process. Ms. Cowan testified that grievances were not lost at Menard and that grievance officials could not access the lockboxes used for the collection of grievances without a key. Though Plaintiff claimed that Ms. Cowan would destroy his grievances, Ms. Cowan stated that she would never do something like that because doing so would threaten her job. Ms. Pierce confirmed Ms. Cowan's testimony that only Grievance Officers could open the lockbox used to collect grievances and that grievances were not destroyed. She also stated that Plaintiff's cumulative counseling summary did not indicate that Menard failed to respond to his grievances.

Ms. Weitekamp testified that the ARB did not lose grievances and responded to those grievances that they did receive.

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). In order to survive a motion for summary judgment, the non-moving party must provide admissible evidence from which a reasonable jury could find in favor of the non-moving party. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Traditionally, the Court's role in determining a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but is instead to determine whether there is a genuine issue of material fact. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that a judge, rather than a jury, should determine whether factual issues relating to the defense of the failure to exhaust administrative remedies exist. 544 F.3d 739, 741 (7th Cir. 2008). If the Court determines that a prisoner did not exhaust his administrative remedies, the Court may select one of the three following outcomes: (a) if the plaintiff still has time to do so, the plaintiff must go back and exhaust his administrative remedies; (b) if the plaintiff's failure to exhaust was innocent, as where prison officials prevent a prisoner from exhausting his remedies, the plaintiff must be given another chance to exhaust; or (c) if the failure to exhaust was the prisoner's fault, the case is over. *Id.* at 742.

The Prisoner Litigation Reform Act ("PLRA") governs lawsuits filed by inmates and states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In order to satisfy the PLRA's exhaustion requirement, prisoners must strictly adhere to the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prisoners must exhaust their remedies before filing suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust administrative remedies while that suit is pending. *Id*. Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Prisoners must follow a prison's administrative rules when exhausting their remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") in order to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The grievance procedures require prisoners to submit a grievance to a counselor within sixty days of discovering the underlying incident. *See* 20 ILL. ADMIN. CODE § 504.800. The grievance must state the "factual details regarding each aspect of the offender's complaint including what happened, when, the name of any individual involved, and where the incident occurred." 20 ILL. ADMIN. CODE § 504.810(a). If a prisoner is not satisfied with the counselor's response, then that prisoner can submit a formal grievance to the prison's

grievance officer. *Id.* at (a)-(b). The officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within two months of receipt of the grievance, when reasonably feasible under the circumstances, the grievance officer must report findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). If the prisoner is still not satisfied with the CAO's decision, the prisoner can formally appeal to the Director through the ARB within thirty days of the CAO's decision. *See* 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its recommendation to the Director, who is then responsible for issuing the IDOC's final decision. *See* 20 ILL. ADMIN. CODE § 504.850(f).

The grievance process also permits an inmate to file an emergency grievance directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO may determine if there is a substantial risk of imminent personal injury or other serious harm to the offender. *Id.* If the CAO determines that the grievance is a non-emergency, the prisoner is notified in writing that the prisoner may resubmit the grievance as a non-emergency and move forward with the standard grievance process. *See* 20 ILL. ADMIN. CODE § 504.840(c).

The statutory purpose of the PLRA is to "afford corrections officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). This allows the prison administration an opportunity to

fix the problem or to reduce damages and to shed light on factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. Unless a prisoner completes the administrative review process by following the rules established for that process, exhaustion has not occurred. *See Pozo*, 286 F.3d at 1023.

## ANALYSIS

Plaintiff asserts that Menard's grievance process is "flawed," with counselors and grievance officials regularly losing or allegedly destroying inmates' grievances. (Doc. 53, p. 4). During the hearing on Defendants' motions, Plaintiff relied on the May 9th grievance, which he alleges was either lost or destroyed when he attempted to refile the grievance as a non-emergency. He points to his alleged June 1st and July 2nd grievances as evidence that his grievances were regularly lost, and he relies on his grievances from 2019 to indicate that he complained about lost grievances. He also relies on testimony from Mr. Thompson stating that he saw Plaintiff file grievances and he also saw other inmates have their grievances lost or destroyed when they submitted them to their counselor. Ms. Cowan directly contradicts that testimony, as she was the counselor who collected grievances on Plaintiff's and Mr. Thompson's cellblock.

There are three circumstances in which an administrative remedy is not capable of use to obtain relief, and is therefore unavailable: (i) when the remedy operates as "a simple dead end," in which officers are unable or unwilling to provide relief; (ii) when,

though mechanisms exist through which inmates can technically obtain relief, the mechanisms are so opaque no ordinary inmate can navigate them; or (iii) when prison administrators thwart a prisoner's attempt to take advantage of available remedies through "machination, misrepresentation or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *see also Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Pavey*, 544 F.3d at 742; *Dole* 438 F.3d at 808. When a plaintiff properly follows the procedure for exhausting administrative remedies, but prison officials mishandle the grievance, the remedy is rendered unavailable. *See Dole*, 438 F.3d at 811. For example, if a prison appellate body rejected an appeal on the basis of a grievance officer's misidentification of the prisoner's prison number, a plaintiff could argue that this mistake rendered his attempts to exhaust his administrative remedies thwarted. *See Ross v. Bock*, No. 16-C-8672, 2017 WL 6758394, at *3 (N.D. Ill. Nov. 29, 2017).

If grievance personnel do not respond to a prisoner's grievance, that prisoner's administrative remedies are also rendered unavailable. *See Dole*, 483 F.3d at 809. However, in order for a prisoner's remedies to be unavailable due to lack of a response, a prisoner must have no indication that officials are pursuing his case. *See Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020). For example, when prison officials state that they will inform a prisoner of the status of his or her grievance within sixty days, "whenever possible," a period of silence exceeding six months nevertheless does not render remedies unavailable because officials may still be investigating a complicated case. *Ford*, 362 F.3d at 400. In contrast, in *Reid*, the Seventh Circuit Court of Appeals found that a two-month period of silence rendered administrative remedies unavailable only because the prisoner

had no other reason to believe that anyone was "looking into" his grievance. 962 F.3d at 331.

In contrast, here, Plaintiff failed to take reasonable steps after an allegedly long period of silence in order to inquire into his grievance. As an initial matter, the Court does not find Mr. Thompson's testimony that Menard destroyed and lost Plaintiff's grievances credible. Mr. Thompson was internally inconsistent about whether he saw Plaintiff file grievances, whether he saw the content of those grievances, and whether he saw grievances returned to other inmates. He was also internally inconsistent about whether he authored his affidavit, and whether he was able to get that affidavit notarized. The Court finds that Mr. Thompson's testimony is unreliable. Accordingly, it turns to the evidence in the record to determine whether Plaintiff's claim that his grievances were lost is credible.

There is little reliable evidence in the record indicating that Plaintiff attempted to exhaust his May 9th grievance. Although Plaintiff submitted letters to the ARB and additional grievances to prison officials complaining about his lost grievances, he did so in 2019, a full year after officials allegedly lost or destroyed the grievance. Plaintiff provided no explanation as to why he inquired into his missing grievances so late. The conclusion the Court draws from this lack of action is that Plaintiff had indication that the prison considered his grievance to be resolved when it deemed the May 9th grievance non-emergent but chose not to pursue the matter further until he was preparing for his lawsuit, which he filed in April, 2020. Therefore, in contrast to *Reid*, in which the plaintiff had no response from prison officials indicating that his grievances were received,

Plaintiff's allegations that his remedies were unavailable to him are not supported by any evidence in the record. Accordingly, the Court finds that Plaintiff's administrative remedies remained unexhausted, and summary judgment is proper in this case.

## CONCLUSION

For the above stated reasons, Defendants' motions for summary judgment for failure to exhaust administrative remedies (Doc. 41, 44) are **GRANTED.** The Court directs the Clerk of the Court to dismiss this case without prejudice.

**IT IS SO ORDERED.**

**DATED: March 31, 2022.**

Digitally signed by Judge Sison 2
Date: 2022.03.31 10:17:32 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**